1:19-cv-756

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **JON UTAUS-SR DOE,** | § | |
| *Plaintiff,* | § | |
| **v.** | § | **C.A. No. _____** |
| | § | |
| **THE UNIVERSITY OF TEXAS** | § | |
| **AT AUSTIN** | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COME NOW, Plaintiff JON UTAUS-SR DOE to file this "Plaintiff's Original Complaint" as follows:

### *PREAMBLE*

*Plaintiff Jon is a passionate young man, who selected to enroll as a student with Defendant UTAustin. Through no fault of Jon's, Jon became entangled in the bureaucracy of Defendant UTAustin, only to be charged, found guilty, and sanctioned for acts Jon never committed. This is a suit seeking equitable relief resulting from the intentional violation of Plaintiff Jon's federal protected rights (created by the U.S. Constitution) by Defendant The University of Texas at Austin.*

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                    1
Glaw 2019.07.28

**SUMMARY OF CONTENTS:**

**A. NATURE OF SUIT**
**B. PARTIES**
**C. JURISDICTION and VENUE**
**D. FACTUAL ALLEGATIONS**
    *1. Who is Plaintiff Jon?*
    *2. UTAustin's Draconian Disciplinary Dragnet.*
    *3. Purported Public Interest being protected by UTAustin's Draconian Disciplinary Dragnet.*
    *4. Plaintiff Jon becomes a Targeted Student and is Sanctioned.*
    *5. UTAustin's Draconian Disciplinary Dragnet illegally violated Plaintiff Jon's rights.*
    *6. Plaintiff Jon has been seriously harmed by UTAustin's Civil Rights Violations.*
    *7. Defendant UTAustin's Action Under the Color of State Law.*
    *8. Administrative Remedies.*
**E. CAUSE OF ACTION**
**F. CONCLUSION**

## A.    <u>NATURE OF SUIT</u>

1.    Plaintiff Jon (defined hereafter) is an undergraduate student attending Defendant UTAustin (defined hereafter).

2.    Having graduated from a high school in Texas in May 2018, Plaintiff Jon had numerous collegiate choices. Jon selected to attend Defendant UTAustin because of the opportunities offered by Defendant UT Austin, being one of the top universities in the United States. Specifically, Jon was admitted to attend the renowned McCombs School of Business.

**PLAINTIFF'S ORIGINAL COMPLAINT**
Glaw 2019.07.28

3.      Most unfortunately, in the Fall of 2018, Plaintiff Jon was targeted by Defendant UTAustin's Draconian Disciplinary Dragnet (defined hereafter). By being targeted, Plaintiff Jon's substantive and procedural due process rights, and, equal protection rights were trampled upon; and Sanctions (defined hereafter) were issued which have harmed, and will continue to harm Jon, emotionally and economically for perhaps the rest of his life.

4.      Plaintiff Jon now files this original action for damages and equitable relief pursuant to:

42      U.S.C. § 1983 with regards to:

Defendant UTAustin's denial (under the color of law) of Plaintiff Jon's equal protection violation, procedural due process violations, and substantive due process violations under the Fourteenth Amendment to the U.S. Constitution; and

## B.   PARTIES

5.      Plaintiff JON UTAUS-SR DOE (hereafter, "Jon") is a male residing in the State of Texas. Because of the privacy issues involved in this matter and the likelihood of retaliation by Defendant, Jon is hereby exercising his rights to proceed with this matter anonymously.

6.    The need to protect the identity of Jon shall not hinder the defense of this matter, for the facts are well known to the Defendant. When applying the balancing tests to determine the needed protection of the privacy of Plaintiff Jon *vs.* the small inconvenience to the Defendant, the protection of Plaintiff's privacy rights prevails.

7.    At such time as the Court might agree on procedures designed to protect the privacy of Plaintiff Jon and ensure an absence of retaliation, Jon's identity shall be disclosed.

8.    Defendant **THE UNIVERSITY OF TEXAS AT AUSTIN** ("UTAustin") is a public university operating in the State of Texas and may be served with citation by serving Defendant's President as follows:

**The University of Texas at Austin**
**Attn: Gregory L. Fenves**
**110 Inner Campus Drive**
**Stop G3400**
**Austin, Texas 78712**

9.    Although Defendant UTAustin is owned and operated by the State of Texas, Defendant UTAustin does receive grants and other funding from the United States.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                          4

Glaw 2019.07.28

## C.  JURISDICTION and VENUE

10.    The jurisdiction of this Court is in accordance with 28 U. S. C. § 1331 as involving a *federal question* proceeding arising under**:**

42 U.S.C. § 1983 ("Section 1983").

11.    Venue is proper in the Western District of Texas (Austin Division) because Defendant UTAustin operates its university in Travis County, Texas which is within the Western District of Texas.

## D.    FACTUAL ALLEGATIONS

### *1.    Who is Plaintiff Jon?*

12.    Plaintiff Jon is a currently a sophomore attending the McCombs School of Business at Defendant UTAustin.

13.    Plaintiff Jon was raised by parents who emphasized hard work and personal integrity, two attributes Jon carries with them daily.

14.    Plaintiff Jon applied such attributes (hard work and personal integrity) in everything Jon did.

15.     Not surprisingly, Plaintiff Jon graduated from high school in Texas in May of 10178 and  had a vast array of university options to choose from before Jon selected Defendant UTAustin.

16.     Out of all the possible 2400 four year and accredited colleges and universities in the United States, Plaintiff Jon selected Defendant UTAustin to attend the McCombs School of Business.

17.     Plaintiff Jon's selection of Defendant UTAustin was based on Jon's belief that not only was Defendant UTAustin the best place for Jon to get the education Jon passionately desired, but that Defendant UTAustin also exemplified a university that cared about its students and provided a broad range of student opportunities (academic and socially) that would allow Jon to grow and mature into young men ready to pursue successful careers after Jon's graduation.

18.     Most regrettably, during Plaintiff Jon's first semester attending Defendant UTAustin (being the Fall of 2018 Plaintiff Jon became a Targeted Student (defined hereafter) resulting in the proposed sanction of suspension, placing medical school and a career in medicine at risk.

**PLAINTIFF'S ORIGINAL COMPLAINT**
Glaw 2019.07.28

### 2. *UTAustin's Draconian Disciplinary Dragnet.*

19.    In advancement of the hereafter described Public Interest, Defendant UTAustin has created various protocols applicable to all students attending Defendant UTAustin with regards to allegations of cheating, plagiarism, collusion, and student honesty and integrity matters (hereafter, collectively "Protocols"). Although the Protocols are accessible online as part of hundreds of publications and handbooks, most students at Defendant UTAustin (including Plaintiff Jon) have no actual knowledge of the Protocols.

20.    Rather than creating steps to ensure that the students at Defendant UTAustin (including Plaintiff Jon) are truly aware of the Protocols, Defendant UTAustin believes it is sufficient to post thousands and thousands of pages online, assuming that the students are meticulously downloading, reading, and analyzing the Protocols, rather than tending to such student's classes.

21.    Under the Protocols, a student attending Defendant UTAustin can become a "Targeted Student" for alleged violations of the Protocols by many different persons and means, including but not being limited to unsupported allegations and rumors being asserted by the following:

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                        7

(a)     an enemy of a student;

(b)     an ex-boyfriend or ex-girlfriend of a student;

(c)     an employee of Defendant UTAustin;

(d)     a student guilty of violating the Protocols who is willing to offer names of other students in exchange for a lessor sanction, whether such students were involved or not (being reminiscent of the *McCarthyism* witch hunts of the 1950s in the United States); or

(e)     essentially anyone willing to spread a rumor about a student.

Hereafter, collectively defined as the "Targeting."

22.     Under the Protocols, once a student of Defendant UTAustin has become a Targeted Student of an alleged violation of the Protocols, the Protocols allow for implementation of various investigation, interrogation, and prosecution steps.

23.     The use of the term "investigation" hereafter is used with great reluctance, as the actual steps pursued by Defendant UTAustin are shrouded in mystery and fail to follow any meaningful investigation as the term is generally used and considered. Further, the use of the term "interrogation" in this Complaint is not intended to be considered mere rhetoric, for the actions undertaken by

**PLAINTIFF'S ORIGINAL COMPLAINT**

Glaw 2019.07.28

Defendant UTAustin are established steps to interrogate the Targeted Student without the student being advised of the Possible Sanctions (defined hereafter) that can be issued against the student, based solely on the student's statements.

24.     The investigation, interrogation, and prosecution steps utilized by Defendant UTAustin after the Targeting of a student, include but are not limited to the following:

(a)     an investigation and interrogation of the Targeted Student by the accuser;

(b)     an initial, summary determination of guilt by the accuser;

(c)     an initial recommendation for a sanction by the accuser;

(d)     an investigation and interrogation of the Targeted Student by the Student Conduct and Academic Integrity department within the Office of the Dean of Students ("Dean of Students");

(e)     a lack of written procedures to be followed during the foregoing referenced investigations and interrogations;

(f)     a summary determination of guilt by the Dean of Students (the exclusion of the term "innocence" is not intended to be hyperbole, for upon information and belief, very few of the Targeted Students are determined to be innocent by the Dean of Students);

(g)     a summary issuance of Possible Sanctions by the Dean of Students;

(h)     in some cases, the denial of appellate rights of the Possible Sanctions issued;

(i)     in other cases (such as Plaintiff Jon), a *semi-de novo* hearing before a "Committee" of students, and university educators or administrators, all of whom are selected by Defendant UTAustin, is held to consider the allegations (hereafter "Hearing");

(j)     the selection of the students for the Committee is drawn from a pool of students wishing to embellish their own resumes by prosecuting other students;

(k)     limited and confusing discovery steps before the Hearing;

(l)     limited and confusing procedures followed during the Hearing;

(m)     although the Targeted Student is denied the right to legal counsel throughout implementation of the Protocols, Defendant UTAustin usually has two to three attorneys present during the Hearing, to represent Defendant UTAustin, as well as to participate and preside over the prosecution of the Targeted Student and the Committee during the Hearing;

(n)     limited and confusing burdens of proof required during the Hearing, under the over used and never truly understood umbrella of "a preponderance of the evidence;"

(o)     private, closed session discussions of the Committee, without the Targeted Student present, but with the legal counsel representing Defendant UTAustin participating, to determine guilt and Possible Sanctions, all of which occur before any record of the Hearing can be transcribed and reviewed;

(p)     determination of guilt and issuance of Possible Sanctions by the Committee;

(q)     the availability (in most cases) of a "paper" appeal to a designated individual within the Dean of Students ("Appellate Officer"). Until just recently, an appeal from a decision of the Committee after a Hearing was heard by the Office of the President of Defendant UTAustin. Having grown tired of the president of Defendant UTAustin being sued for improper disciplinary decisions, Defendant UTAustin had done away with an appeal to the president, and instead, has designated a person within the Dean of Student's to consider appeals;

(r)     with the Appeal now directed solely to the Appellate Officer within the Dean of Students, the Appeal process has become even more of a bad joke, as the Appeal is being handled by the same office that is in charge of the Draconian Disciplinary Dragnet;

(s)     limited and confusing procedures to be followed during the Appeal;

(t)     limited and confusing burdens of proof required during the Appel, under the over used and misunderstood umbrella of "a preponderance of the evidence;"

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                    11

(u)   a unilateral and final determination of the proprietary of the determination of guilt and Possible Sanctions by the Appellate Officer; and

(v)   a glaring lack of confidentiality protections throughout the foregoing.

Hereafter, the Protocols, the Targeting, the foregoing investigations, the interrogations, the Hearing, the Appeal, the lack of appeal, the determinations of guilt, issuance of Possible Sanctions, the lack of confidentiality safeguards, and the Double Jeopardy scenario shall be collectively referred to as the "Draconian Disciplinary Dragnet."

25.    Throughout the entirety of Defendant UT Austin's Draconian Disciplinary Dragnet, the Targeted Student is denied the right to legal counsel ("Denial of Legal Counsel").

26.     If found guilty during the Draconian Disciplinary Dragnet, there are a number of "Possible Sanctions" that can be issued against the Targeted Student, including but not being limited to:

(a)   suspension from Defendant UTAustin;

(b)   expulsion from Defendant UTAustin;

(c)   placement of the Targeted Student on disciplinary probation;

12

**PLAINTIFF'S ORIGINAL COMPLAINT**

Glaw 2019.07.28

(d)     placement of the Targeted Student on academic probation;

(e)     the issuance of a zero for a particular exam or assignment;

(f)     the issuance of an "F" for a particular exam or assignment;

(g)     the issuance of a Zero for a particular class;

(h)     the issuance of an "F" for a particular class;

(i)     mandated attendance at counseling or meditative sessions directed by Defendant UTAustin;

(j)     the retention of all records of the Draconian Disciplinary Dragnet within the Targeted Student's student file for seven years; and

(k)     a glaring lack of confidentiality protections as to the issuance of the Possible Sanctions.

27.     Throughout the entirety of Defendant UT Austin's consideration and issuance of the Possible Sanctions (such Possible Sanctions hereby deemed to be a part of the Draconian Disciplinary Dragnet), the Targeted Student is, again, subject to the Denial of Legal Counsel.

28.     In the words of Defendant UTAustin, the Draconian Disciplinary Dragnet is (paraphrasing) "*an educational process for the students, which does not require the right to legal counsel or a higher level of due process*" (hereafter, the "Educational Process View").

29.     Defendant   UTAustin's   Educational   Process   View   exists notwithstanding that the Draconian Disciplinary Dragnet directly causes serious economic and emotional harm to a Targeted Student, including but not limited to the following:

> (a)     causing the Targeted Student to be suspended, or expelled; thereby incurring the economic damages of having to pay to re-do a year or more, or forever altering post-graduate and career plans;

> (b)     to retake a class, thereby incurring the economic damages of having to pay for the same class twice, having to re-do a year or more, or forever altering post-graduate and career plans;

> (c)     in cases where a suspension or expulsion is mandated, then the Targeted Student is denied the ability to continue with additional university studies as planned, as well as being harmed in efforts to enter into the employment market or causing economic harm for the rest of the Targeted Student's life;

(d)     in cases where a class retake is mandated, depending on how often Defendant UT Austin offers the class to be retaken, the retake sanction can often require an additional year of attendance at Defendant UTAustin, which then mandates additional tuition, room, and board expenses;

(e)     under the foregoing circumstances when an additional year, or perhaps more, is required as a result of the Possible Sanctions, then the Target Student is faced with additional student loan repayments and interest;

(f)     a potential transfer of the Targeted Student to other universities can be denied;

(g)     the Targeted Student's reputation is harmed within the professor and administrative community of Defendant UTAustin and elsewhere;

(h)     the Targeted Student's reputation is harmed within the student community of Defendant UTAustin and elsewhere;

(i)     the Targeted Student's reputation is harmed within the family of the Targeted Student;

(j)     because employers and other university applications now often ask whether the Targeted Student was ever the subject of a disciplinary matter while at Defendant UTAustin, the required "yes" answer by the Targeted Student eliminates employment and educational opportunities with a lifetime economic impact;

(k)   the mandated counseling or meditative sessions (being nothing more than forced counseling not under the care of a medical professional) can interfere with the emotional and mental well-being of the Targeted Student;

(l)   the Targeted Student often suffers serious negative emotional, physical, and mental harm;

(m)   the Targeted Student's emotional, physical, and mental harm can continue throughout such Student's life;

(n)   the Targeted Student's emotional, physical, and mental harm can cause scenarios of self-inflicted physical harm to the Targeted Student that previously did not exist;

(o)   the Targeted Student's emotional, physical, and mental harm can create life and death risks to the Targeted Student that previously did not exist; and

(p)   the treatment of the foregoing described emotional, physical, and mental harm creates health care and medical expenses.

Hereafter, the foregoing shall be referred to collectively as the "Potential Harm."

### 3.   *Purported Public Interest being protected by UTAustin's Draconian Disciplinary Dragnet.*

30.   Based upon information and belief, the purported public interest ("Public Interest") being advanced and protected by Defendant UT Austin through

**PLAINTIFF'S ORIGINAL COMPLAINT**

Glaw 2019.07.28

Defendant UTAustin's use of the Draconian Disciplinary Dragnet is to protect the integrity of degrees granted by Defendant UTAustin.

31.     When reviewing, however, the Potential Harm to the Targeted Student, Defendant UTAustin's Educational Process View is untenable, for the Draconian Disciplinary Dragnet is arbitrary and not reasonably related to Defendant UTAustin's Purported Public Interest.

32.     Further, the Potential Harm to the Targeted Student does not support the limitations and failures of Defendant UTAustin's Draconian Disciplinary Dragnet, and, the need to avoid the Potential Harm to be suffered by the Targeted Student far outweighs the manner in which Defendant UTAustin has elected to protect the stated Public Interest.

### 4.     *Plaintiff Jon becomes a Targeted Student and is Sanctioned.*

33.     In the Fall of 2018, Plaintiff became a Targeted Student as a result of "False allegations" being made against Jon.

34.     Following the playbook of Defendant UTAustin's Draconian Disciplinary Dragnet, Plaintiff Jon was summoned to a meeting with the Dean of

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                     17

Students (hereafter "DS Meeting"), wherein Jon was accused of having violated the Protocols of Defendant UT Austin.

35.    Plaintiff Jon was denied the right to attorney participation in the DS Meeting.

36.    The allegations and arguments made by Defendant UTAustin during the DS Meeting:

    (a)    were confusing;

    (b)    included the Dean of Student's own unsupported assumptions and conclusions as to Jon's purported actions;

    (c)    assumed that Plaintiff Jon was obviously guilty of something, because Jon was a Targeted Student; and

    (d)    were clearly conclusory.

37.    After the foregoing investigation and interrogation by the Dean of Students but still during the short DS Meeting, the Dean of Students informed Plaintiff Jon that Jon was found guilty of the violating the Protocols of Defendant UTAustin, proven by a preponderance of the evidence and would be sanctioned by being suspended  the "University Decision").

**PLAINTIFF'S ORIGINAL COMPLAINT**

Glaw 2019.07.28

38.     Throughout the numerous steps of the Defendant UTAustin's Draconian Disciplinary Dragnet, representatives of Defendant UTAustin, throw around the phrase "preponderance of the evidence" without any meaningful understanding or policy as to what the true meaning of such phrase is. In doing so, Defendant UTAustin is purposely misleading each Targeted Student into believing that some sort of judicial process is being followed, which is wholly false.

39.     As to Plaintiff Jon, the University Decision was that:

(a)     Jon had colluded with other students ("Collusion"), based solely on Defendant UTAustin's use of a computer generated analysis of the result of various quizzes taken during one particular course ("Course") in the Fall of 2018 and without any testimony from any student or class professor;

(b)     Jon would be required to write a Reflection Paper-Honor Code and Academic Integrity;

(c)     Jon would receive an "F" for the Course, would not only harm Jon's otherwise pristine transcript with Defendant UTAustin but would require Jon to repeat the Course; and

(d)     Jon would be placed on Academic Integrity Probation ("Probation"); and

(e)   Jon's academic records with Defendant UTAustin would reflect the issuance of the "F" and the Academic Probation.

For the purposes hereof, the sanctions set forth in subparagraph (c) and (d) above shall be collectively referred to as the "Sanctions."

40.   In accordance with the Protocols of Defendant UTAustin, Plaintiff Jon then did elect to have finding of Collusion and the issuance of the Sanctions head by a Committee.

41.   A Committee was subsequently convened, and a Hearing held to consider the University Decision.

42.   During the Hearing:

(a)   Jon took certain on-line quizzes ("Quizzes") in his dorm room, that, at times, had other students present;

(b)   Neither the course syllabus nor the University Rules prohibited me from taking the Quizzes in the presence of other students; provided, that I did not collude with the other students;

(c)   The only evidence presented against Jon during the Hearing was a report generated and testimony by, a representative of the Liberal Arts Technology Instructional Technology Service (LAITS);

**PLAINTIFF'S ORIGINAL COMPLAINT**

Glaw 2019.07.28

(d)     The LAITS representative and Jon were the only witnesses called by the University to testify at the Hearing;

(e)     The LAITS representative testified that the LAITS report and her testimony **were not evidence of Collusion,** rather merely data for review and analysis by the respective professor;

(f)     The University failed to call the respective professor as a witness to formally testify that the LAITS data supported a finding of cheating or collusion;

(g)     As a witness for myself, Jon called Jeffrey Miller, Ph.D. ("Dr. Miller"), a professor of computer science at the University of Southern California who testified as to the deficiencies contained within the LAITS report;

(h)     In addition to Dr. Miller's testimony, the Committee was provided with an "Expert Report" prepared by Dr. Miller, which Dr. Miller discussed at length during the Hearing;

(i)     Dr. Miller's testimony and Expert Report articulated that the data gathered by LAITS showed that I did not collude with anyone else during the Quizzes;

(j)     The LAITS representative was present during the testimony of Dr. Miller;

(k)     The Dean of Students was provided an opportunity for the LAITS representative to ask rebuttal questions of Dr. Miller, and the Dean of Students and the LAITS representative declined; and

(l)    The Dean of Students was then also provided an opportunity to offer additional testimony to rebut any or all of the testimony given by Dr. Miller, including Dr. Miller's Report, and the Dean of Students and the LAITS representative declined to offer any rebuttal evidence.

(For the purposes hereof, the foregoing shall be referred to as the "Undisputed Evidence").

43.    Notwithstanding the Undisputed Evidence that Plaintiff Jon was not guilt of Collusion, the Committee issued a written decision ("Committee Decision") that:

(a)    affirmed the University Decision and the Sanctions;

(b)    made findings in support of the University Decision including the adoption, in total, of the testimony and report offered by LAITS; and

(c)    made no findings as to the uncontroverted expert testimony offered by Dr. Miller.

44.    Plaintiff Jon did Appeal the Committee Decision, including the Sanctions, to the Appellate Officer who summarily upheld the Committee Decision, including the Sanctions.

45.    In upholding the Committee Decision, the Appellate Officer stated:

(a)    Relied upon the Defendant UTAustin's Protocols, wherein: "Legal rules of evidence do not apply to hearings under the subchapter, the hearing officer or

foreperson of the SCB *(herein, the Committee)* panel may admit and give effect to evidence…"

(b)   Ignored the Uncontroverted Evidence;

(c)   Ignored the Committee's failure to even acknowledge the uncontroverted testimony offered by Dr. Miller which exonerated Jon; and

(d)   Made a finding that the Committee was within the Committee's rights to ignore the uncontroverted testimony offered by Dr. Miller which exonerated Jon.

### 5.   *UTAustin's Draconian Disciplinary Dragnet illegally violated Plaintiff Jon's Rights.*

46.   The issuance of the University Decision, the Committee Decision, and the upholding of the Committee's Decision by the Appellate Officer as to Plaintiff Jon, including the issued Sanctions, resulting from Defendant UTAustin's Draconian Disciplinary Dragnet is arbitrary and capricious, and, not reasonably related to Defendant UTAustin's Purported Public Interest with regards to Plaintiff Jon.

47.   Further, the Sanctions imposed upon Plaintiff Jon were not appropriate to the alleged wrong committed by Plaintiff Jon, for such Sanctions are ongoing, for the rest of Plaintiff's Jon's life and impact Jon's Property Interest (defined hereafter).

48.     With the issuance of the University Decision, the Committee's Decision, including the Sanctions, and the upholding of the Committee's Decision by the Appellate Officer as to Plaintiff Jon, the imposition of Defendant UTAustin's Draconian Disciplinary Dragnet upon Plaintiff Jon (including but not being limited to the Denial of Legal Counsel) is complete and Sanctions permanent in violation of Jon's:

> substantive and procedural due process rights and guarantees of equal protection created by the U.S. Constitution.

For the purposes hereof, the foregoing violations shall be collectively referred to as the "Civil Rights Violations" committed by Defendant UTAustin.

### 6.     *Plaintiff Jon has been seriously harmed by UTAustin's Civil Rights Violations.*

49.     As a direct result of the Defendant UTAustin's Civil Rights Violations against Plaintiff Jon, the Potential Harm has become a reality for Jon.

50.     Upon on information and belief, an excessively high percentage of Targeted Students then being sanctioned by Defendant UTAustin makes clear that the presumption of innocence obviously plays no part of the UTAustin's Draconian Disciplinary Dragnet.

**PLAINTIFF'S ORIGINAL COMPLAINT**

Glaw 2019.07.28

51.    As a direct result of Defendant UTAustin's Civil Rights Violations against Plaintiff Jon, Jon has also suffered physical, emotional, and economic harm as a result of Defendant UTAustin's Civil Rights Violations, and, shall suffer future physical, emotional, and economic harm, including actual and consequential damages.

52.    As a direct result of the Defendant UTAustin's Civil Rights Violations against Plaintiff Jon, Jon's mental health has deteriorated and is likely to continue to deteriorate.

53.    Plaintiff Jon's enrollment with Different UTAustin and Jon's payment of tuition and other required fees to Defendant UTAustin, created a financial and economic interest in obtaining a degree with future economic value (collectively hereafter, "Property Interest").

54.    As a direct result of the Defendant UTAustin's Civil Rights Violations against Plaintiff Jon, Jon will (a) have to retake the class already taken but given an "F" (resulting in economic harm in and of itself), (b) remain on Probation, thereby being subject to even suspension or expulsion in the event Jon is again targeted by Defendant's  UTAustin's Draconian Disciplinary Dragnet, and (c) will forever have

a tarnished reputation and record as to Jon's studies at Defendant UTAustin which will affect Jon's economic and career opportunities for the rest of Jon's life.

55.     The foregoing economic results of the Sanctions impact Plaintiff Jon, as previously discussed in the Potential Harm, is now a reality for Jon.

56.     Defendant UTAustin's Civil Rights Violations as to Plaintiff Jon were committed intentionally and in bad faith, or with reckless disregard for the outcome, constituting a conscious indifference by Defendant UTAustin.

### 7.     *Defendant UTAustin's Action Under the Color of State Law.*

57.     The administrators participating in Defendant UTAustin's Civil Rights Violations, including but not being limited to representatives of the Dean of Students including the Appellate Officer, are the individuals charged with the responsibility of implementing the Protocols, which were established by the policy makers of Defendant UTAustin and were implementing the policies and customs (the Protocols) of Defendant UTAustin when committing the Civil Rights Violations.

58.     Further, if any portion of such policies are not, in fact written, each of the administrators participating in Defendant UTAustin's Civil Rights Violations,

**PLAINTIFF'S ORIGINAL COMPLAINT**

Glaw 2019.07.28

were implementing the policies and customs of Defendant UTAustin in accord with the customs and practices of Defendant UTAustin.

59.    Additional insight into the university wide acceptance and implementation of the Defendant UTAustin's policies and customs being at the core of Defendant UTAustin's Draconian Disciplinary Dragnet is provided by the following two events occurring in recent matters unrelated to Plaintiff Jon:

(a)    In December 2018, a United States Congressman (from the State of Texas) contacted the Washington D.C. office of Defendant UTAustin to obtain more information related to one of his constituents (being a student at Defendant UTAustin) having been sanctioned as a result of the  Draconian Disciplinary Dragnet. In no uncertain terms, a vice chancellor of Defendant UTAustin informed the Congressman, *paraphrasing,* that Defendant UTAustin would not be responding to the Congressman's inquiry, would not look into any purported disciplinary matter, and would not even return any future calls or further inquiries from the Congressman related to disciplinary matters of Defendant UTAustin's students; and

(b)    In a separate matter occurring this month, an attorney representing a separated Targeted Student, raised certain jurisdictional issues related to the Draconian Disciplinary Dragnet and was informed, *paraphrasing*, there might not be a written policy giving us (Defendant UTAustin) jurisdiction over the Targeted Student, but that is how we choose to proceed.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                      27

### 8. *Administrative Remedies.*

60.     There are no administrative remedy preconditions ("Preconditions") required prior to seeking relief under the laws being invoked herein by Plaintiff Jon. Even if such Preconditions did exist, the actions of Defendant UTAustin have shown that such efforts would be futile or are otherwise moot.

61.     As a result of Defendant UTAustin's Civil Rights Violations committed against Plaintiff Jon, Jon was required to engage legal counsel to protect Jon's rights and redress the harm Jon has suffered.

62.     All conditions precedent to Plaintiff Jon bringing these claims have been met.

### E.   PLAINTIFF'S CAUSE OF ACTION

63.     Plaintiff Jon incorporates by reference the facts set forth in foregoing ARTICLE D: GENERAL BACKGROUND hereof.

### COUNT ONE: SECTION 1983 VIOLATIONS

64.     Defendant UTAustin's implementation of the Draconian Disciplinary Dragnet, the University Decision, and the Sanctions, Discriminatory are not warranted denials of Jon's rights, sufficient to support the Public Interest purportedly being protected.

**PLAINTIFF'S ORIGINAL COMPLAINT**

Glaw 2019.07.28

65.   Section 1983 of Title 42 of the United States Code provides, in part,:

> "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, and citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the part injured in an action at law, suit in equity, or other proper proceeding for redress…"

66.   Defendant UTAustin's Civil Rights Violations were committed against Plaintiff Jon under the color of law and resulted in the violation of Plaintiff Jon's rights under the United States Constitution and other federal laws.

67.   Specifically, Defendant UTAustin's Civil Rights Violations were committed under the color of law and resulted in the violation of Plaintiff Jon's rights under:

(a)   the procedural due process requirements of the United States Constitution as set forth in the Fourteenth Amendment, in violation of Jon's Property Rights;

(b)   the substantive due process requirements of the United States Constitution set forth in the Fourteenth Amendment in violation of Jon's Property Rights; and

(c)   the equal protection requirements of the United States Constitution set forth in the Fourteenth Amendment in violation of Jon's Property Rights.

68.    Defendant UTAustin's discriminatory conduct toward Plaintiff Jon, in violation of Section 1983 have caused Plaintiff Jon to suffer a loss of benefits and created economic losses, including all actual, consequential, continuing, and future compensatory damages.

69.    Defendant UTAustin's Civil Rights Violations against Plaintiff Jon in violation of Section 1983 have caused Plaintiff Jon to suffer mental and emotional distress and damages, including all actual, consequential, continuing, and future compensatory damages.

70.    Although the Eleventh Amendment to the United States Constitution prevents Plaintiff Jon from seeking financial damages against Defendant UTAustin for Defendant UTAustin's violation of Jon Civil Rights, Section 1983 does allow Jon to seek equitable relief, which Jon does now seek, including but not being limited to:

     (a)    reversal of the Decision;

     (b)    removal of the Sanctions;

     (c)    requiring Defendant UTAustin to strike all negative information, emails, evaluations, and materials as to Plaintiff Jon relating to the foregoing actions and Sanctions from the records of Defendant UTAustin; and

(d)   the removal from all of Plaintiff Jon's records at Defendant UTAustin that Plaintiff Jon was ever the subject of any disciplinary matter while attending Defendant UTAustin.

For the purposes hereof, the equitable relief set forth in Subparagraphs (c) and (d) shall be collectively referred to as "Expungement").

## F.   REQUEST FOR JURY

71.   Plaintiff Jon hereby requests that a jury be empaneled, and, that the foregoing causes of actions and requests for relief be presented to such jury for resolution.

## G .   PRAYER FOR RELIEF

WHEREFORE, Plaintiff JON UTAUS-SR DOE prays the necessary summons be issued; that upon final trial hereof, that Plaintiff Jon be granted the equitable relief requested; and that Plaintiff Jon have such further and other relief, general and special, both at law or in equity, to which he may show himself to be justly entitled.

Respectfully submitted,

GORMAN LAW FIRM, pllc

By: _____

Terry P Gorman, Esq.
Texas Bar No. 08218200
tgorman@school-law.co
Chigozie F. Odediran, Esq.
Texas Bar No. 24098196
codediran@school-law.co
901 Mopac Expressway South, Suite 300
Austin, Texas 78746
Telephone: (512) 320-9177
Telecopier: (512) 597-1455
**COUNSEL FOR PLAINTIFF**
**JON UTAUS-SF DOE**

**PLAINTIFF'S ORIGINAL COMPLAINT**
Glaw 2019.07.28